And our next case is 21-22-38, 2K, it's Victor Worms versus Yuri Vladimirovich Roskov in the context of the bankruptcy. In re. Larisa Ivanovna Markus. I tried to say it fast enough to obscure my pronunciation problems. Good morning, your honors. My name is Victor Worms and I am the appellant in this case. This appeal seeks to have the court reverse and vacate the district court's decision of April 3, 2022, that held that the bankruptcy court had inherent contempt authority to hold me in contempt and to impose contempt sanctions upon me. This appeal also seeks to vacate the legal fee award of the bankruptcy court. The central issue on this appeal, judge, your honors, is whether a bankruptcy court, an Article I court, has inherent contempt authority similar to an Article III court. Have we answered that question in the Sanchez case? Yes, judge. I think the issue here is that there really is no inherent contempt authority in an Article III court, but that the contempt authority of the bankruptcy court. But didn't we squarely address that issue in Sanchez? No, no. Sanchez is an interesting case because Sanchez involved non-contempt sanctions. Actually, if you look at the district court record in Sanchez, it was a contempt finding against an attorney. Judge, the underlying case which originated in bankruptcy court in Sanchez involved a $1,000 monetary award against an attorney for multiple failures to comply with orders to show cause. What the court said in Sanchez, this court, is that there is bankruptcy court has inherent authority to impose relatively minor non-competitory award. So the Sanchez case does not provide the predicate for an inherent contempt award. In fact, the inherent contempt award, your honors, resides in Article III court. It is the judicial power of the United States. And as a statutorily created court, a bankruptcy court can only have the authority given to it by Congress. Congress has no inherent contempt authority, and therefore, having created the bankruptcy court, Congress cannot give to the bankruptcy court Article III authority. And that's been made very clear. In fact, that is the rule. How can a court function if it doesn't have the ability to impose some discipline on lawyers who are not hypothetically, and I know you're contesting this, but if a court can't impose some discipline on lawyers who are not obeying its orders? Well, but that's a very good question, Judge. The court can impose discipline on attorneys. But there are two forms of discipline that a court can impose. A court can impose non-contempt sanction under its inherent authority, and that requires a specific finding of bad faith. So the court can do that. The separate issue, though, is Congress did provide for contempt, your honor. It provided for it in Section 105 of the bankruptcy court. Why isn't there a bad faith finding here or findings sufficiently egregious that they are tantamount to good faith? I mean, statements like that you deliberately, even brazenly violated the court's orders and stuff like that. I mean, how do you do that in good faith? Well, here's the issue with that. There are two issues that the court just raised. One, and this court specifically mentioned in Ray Gravel, a case which this court, you were on the panel for, Judge, you made a specific determination in that court in rejecting the dissent that there cannot be an imputation or concern as to bad faith. There has to be a specific finding of bad faith. It has to be done in a specific – there was no specific finding of bad faith here, Judge. So what if there was a finding of bad faith and it was supported by a finding that the lawyer had willfully, deliberately, even brazenly violated court orders? Would that – wouldn't that be a sufficient finding of bad faith? It would not – it would be – it wouldn't necessarily be a sufficient finding of bad faith, but let me address the issue specifically, your honor, because here is the issue. We have contempt and we have non-contempt sanctions. So with respect to bad faith, bad faith only applies where there is a non-contempt imposition of sanction. You yourself, your honor, made a specific determination in Ray Gravel that you have to have the actual finding. And there's a distinction. So if the court had held me in civil – if it wasn't contempt, and that's what you did in Ray Gravel, you focused specifically on whether what was – the sanction involved was contempt. Here it is contempt. And because contempt is such a specific kind of sanction, it has a higher requirement. You simply cannot take a bad faith, which was never determined, there was never a bad court hearing, and then imply that it can be used to support contempt with respect to inherent authority. Ms. Torrence, can I – one of the things I'm sort of struggling with is language. And the way that we use – we talk about sanctions and we talk about contempt, but we often talk about contempt sanctions. And I think, as I understand it, in your view of the world, there are sanctions, and then there is contempt, and they sort of live in different legal boxes. And one of the things I'm trying to figure – am I right about that? That sanctions, as we described them in, for example, Sanchez, are a different animal from contempt? Or is contempt just one of many types of sanctions? No. Let me try to clarify that, because that's also at the core of the appeal, because the court below interspersed contempt and contempt sanctions, and they apply different standards. This court has made it clear that for each version of sanctions that are available to a court, there must be a specific authority for that sanction and their specific factors. So, for example, if you have sanctions, let's say, under 1928, which deals with attorney's conduct, there's a bad faith finding. If you deal with contempt, you require clear and convincing evidence, a burden upon the movement, and in addition to that – What I'm trying to figure out, just to bring it back, is whether when we held in Sanchez that the bankruptcy court, as an incident to being a court, has inherent authority to oppose sanctions, non-compensatory sanctions in that case, at least to a limit, whether that holding encompassed the universe of sanctions and therefore encompassed contempt. I'm not going to the question of what the ethical standard is. I'm really going to whether the inherent authority exists in the first place. I think with respect to Sanchez, there was a specific statutory authority. I think here we have not only an issue as to whether the bankruptcy court has inherent authority, but we have a major due process violation here. The major due process violation, which I think really requires reversal here, is that the foreign representative did not make a motion for contempt and contempt sanctions based upon the court's inherent authority. This was something which district court, looking at Shulatani, said, well, there's this passing reference to Shulatani, and therefore, because there was this passing reference by the foreign representative, it now provides a predicate for contempt sanctions against me. That is a major due process violation because the court has made it clear that in order to have contempt sanctions, or any sanctions for that matter, there has to be a specific authority for that sanction, and it must be clear, it must be identified as well as a factor. So if you look at this case, Your Honor, there is no doubt whatsoever that the issue of inherent contempt sanction came up the first time at the district court. I'm sorry, I know your time is up, but I'm going to ask you to turn to something else, and that is there's a component of the assessment, which is attorney's fees. How is that affected? I mean, why can't a court impose attorney's fees for what your adversary has expended in an initiative that failed? Well, here is the issue with attorney's fees. Attorney's fees must be identified. In the motion for sanctions, they specifically referred to Rule 37, which the district court said had no application. Once the district court found that there was not a predicate given by the bankruptcy court for legal fees, the fee had to be vacated because this court has made it clear that where legal fees are being, and by the way, the legal fees weren't a separate entity. They were part of the contempt sanctions. So it wasn't a freestanding circumstance where legal fees were just being issued, but it was being issued as a component of compensatory contempt sanctions, and that makes a difference because in that instance, you have to have a specific authority for that sanctions, which did not exist. One last point I may make on Your Honor's question. And so what we have is the bankruptcy court says, well, since my sanction order referred to inherent authority, and my legal fees referred to the sanction authority, therefore, the legal fees were based upon inherent authority. So you have this piggyback circumstance where the legal fees are being predicated upon a reference in the legal fee order to a sanction order, which supposedly referred to inherent authority. That is just plain violation of due process. It's simply unsustainable. I see my time is up initially. If you have any other questions. We'll hear from you on rebuttal. Thank you, Mr. Williams. Mr. Selbsky. Good morning. My name is Stephen Selbsky. I have Herrick Feinstein. I represent Yuri Roshkov, the appellee in this matter. Your Honors, we ask this court to affirm the rulings below because we contend the bankruptcy court properly held Mr. Worms in contempt under its inherent authority. Your Honors, jump right into the issue of Sanchez. And I want to take a step before Sanchez, and I want to discuss the Supreme Court's holding in Chambers v. NASCO. Chambers said all courts, by virtue of their being federal court, have the power to impose sanctions. In this court, in the Sanchez court, I believe that this court specifically rejected the argument that Mr. Worms has now made. This court held that bankruptcy courts have the same inherent authority to impose sanctions and that those powers are, quote, not contingent on Article III, but rather are, as their name suggests, inherent in the nature of federal courts. That's 941 F. 2nd, 625, and the pin is 627, 628. And going back to the record, as Judge Chin did in Sanchez, the sanctions that were at issue in Sanchez was an imposition of contempt against the attorney. So rather than going back in the record and constructing what the court must have meant, I'm looking at what the court said, what we said. And it defines as inherent the power to impose relatively minor noncompensatory sanctions on attorneys appearing before the court in appropriate circumstances. And it specifically reserves the question of the boundaries of that. Isn't this a case that asks us to now evaluate whether this quite substantial sanction, whether it's under the auspices of contempt or not, fits within the bounds of this inherent authority? Did Sanchez really answer that question? Your Honor, that's a perfectly fair question. And let me talk about the record for just a second, and then I'll get back to your answer. What the record showed here, and it's amply supported in the record, was that Mr. Worms had not complied with the bankruptcy court's order for roughly two months before the sanctions hearing was held. The sanctions hearing was held on October 3rd of 2019. On November 27th, 2019, he purged himself of his contempt. And my point about this is that the sanctions had the proper coercive effect. They stopped months of stonewalling and discovery. And now I want to turn to what Judge Glenn said when he assessed those sanctions, because he took into consideration all of the circumstances of the case. And this is in the record. What he said is the monetary sanction of $1,000 per day until Mr. Worms complies is clearly coercive. Sanctions will stop when Worms complies. My point is, Your Honor, bankruptcy Judge Glenn, with full knowledge of all the facts, in his mind carefully calibrated the sanctions at an appropriate level. Your question is fair. I'm not disputing that. But my point is the record gives you plenty of bases to uphold the sanctions that Judge Glenn found, because he found them on the basis of the record. So I'm focusing not on whether the authority was exercised appropriately. I'm backing up to this threshold question of whether, A, the authority existed at all. And I'm curious, because I read the Law v. Siegel case. It seemed like the U.S. Supreme Court was, if anything, a little bit skeptical about the scope of the bankruptcy court's inherent authority in these kinds of matters. And I'm wondering if you can tell me a case other than Sanchez that talks specifically about the contempt power, either in the context, Second Circuit or U.S. Supreme Court, of a contempt order. I don't have those cases. What I do have is another case from Judge Glenn, which we cited in our papers, where Judge Glenn in the MF Global case relied on his inherent authority to impose sanctions for violations of a court's order. I don't have – I'm not trying to duck your question at all, Your Honor. I'm clearly acknowledging that Sanchez did not clearly set the boundaries of that. What I'm trying to urge to you is that this Court can properly find, based on this record, that these sanctions imposed were not excessive. Gravel was sort of a polar case. The sanctions there were clearly excessive, were clearly inappropriately levied. But one of the things we said in Gravel is we tied – and this was based on the U.S. Supreme Court's decision – we tied the contempt authority specifically to Section 105. And do you agree that Section 105 provides a statutory hook for the bankruptcy court to exercise – issue contempt sanctions, both constitutory and coercive? It does, but it's not sufficient, Your Honor. Let me take a step back. Section 105A, as this Court has repeatedly said, exists to remedy – for the Court to issue orders in aid of specific sections of the bankruptcy code. What this Court has said, as recently as the Derrymark case, is that 105A is not sort of a roving injunction to do equity, but it has to be confined to violations of the bankruptcy code. Well, but then Taggart came along, right? And then Gravel came along. And in Gravel, we talked about the Supreme Court's analysis in Taggart that said that the violation of a court injunction in itself, coupled with 105, provides support for the contempt authority without having to find a specific section of the bankruptcy code. Well, that is not actually what Mr. Worms argued. But let me try it again. This Court said in Calico that Section 105A and the inherent authority are complementary authority. And if you took Mr. Worms' argument at its face, what he would say is unless you found that he was subject to sanction under 105A, his conduct would not be sanctionable. And I think that goes back again to both Chambers and to this Court's decision in Sanchez, which is to say if it's not a specific violation, there has to be a way for courts to be able to sanction attorney misconduct. And as we argued in the papers, this record here is replete with evidence of Mr. Worms' conduct. So was this contempt order, could it have been supported under 105A in light of the U.S. Supreme Court's decision in Taggart and our decision in Gravel? I think it could have been, Your Honor. And that's, again, so I'm sorry. No, no. So then the follow-up question is, okay, if that's the case, and if it's also the case, and you can tell me if it's not, that you should only invoke your contempt, this inherent authority, which is sort of something that's very much a thing of last resort and small. If 105A is available, then why would it be proper for the court to invoke its inherent authority rather than invoking 105A? I'll go back to what I said a moment ago, Your Honor. First off, this court can support any of the decisions below on bases not relied upon in the record. So if Your Honor just wanted to find that Mr. Worms' conduct violated 105A, there's certainly adequate basis for that in the record. But secondly, because the foreign representative did not move under 105A but moved under 3745 and cited the Shilatani case, what I'm saying is, and as the Calico case says, they're complementary authorities. You could find that the conduct violated 105A, but you could also independently find, which is our position here, that the conduct transgressed to a sufficient degree that the inherent authority of the court was validly exercised in holding Mr. Worms in contempt. Does that answer your question? Yeah, and you just sort of reminded me of this notice issue. One of the things that I thought was interesting is, of course, there's this parallel proceeding with the bank case. Correct. And in the parallel proceeding, within a couple of days of filing the motion that we're arguing about, there was a motion against Mr. Worms that specifically, from the outset, identified inherent authority as the basis upon which it was seeking the court's contempt sanction. And there's nothing comparable. I understand there's a citation to Shilatani with a parenthetical that uses the words inherent authority, but there's nothing comparable in the motion as it relates to Mr. Worms in this individual bankruptcy, Chapter 15 proceeding for Ms. Marcus, and I'm just trying to figure out whether that distinction reinforces the notion that you can't properly conclude that he had noticed that this was an inherent authority case based on the motion that was presented and argued to the court. Well, I guess I would point this Court to Judge Lyman's decision of April 3rd of 2020, because there was colloquy in that hearing in the transcript between Mr. Worms and Judge Lyman in which, at that time, Mr. Worms conceded the courts have inherent authority. And in his findings, Judge Lyman found, and it's in the record, that, in fact, Mr. Worms was on notice that the court was exercising its inherent authority. You know, that's — I didn't make that up. That's Judge Lyman's findings on that. And so it is our position that, in fact, Mr. Worms was on specific notice. And furthermore, your reference to the Vineshpom case, certainly he was on notice because of that case that a court could exercise that. He was on personal notice that courts could at least — I'm sorry — that litigants could at least seek those sanctions under inherent authority for that very reason, Your Honor. Well, and so that's interesting. So you're taking — you're cutting the — you're using the inference in a different direction. What I'm thinking is if we have to be confident that he understood that this particular motion that we're now adjudicating, reviewing on appeal, was seeking contempt sanctions pursuant to the inherent authority, it's — I think even the district court recognized that looking at that motion in its own right, it would be tough to reach that conclusion. And the court drew some inferences based on some briefing to the district court where there was a reference to a motion filed against him invoking the inherent authority. But I think it's pretty clear from the record that that was the bank motion, not the motion in this case. Am I misunderstanding that? No, no, you're not misunderstanding that. But again, I go back to what Judge Lyman said. Judge Lyman said that there was no doubt in his mind that Mr. Worms was, in fact, on actual notice that inherent authority was being invoked against him. I can't — I can't change the record. I can't change the motion that the foreign representative filed. But I can point the court to the findings made below, which we believe are wholly substantiated by the record. Thank you. Any further questions? Thank you, Your Honor. Thank you. Just a few points on rebuttal, Your Honor. Counsel has not explained to this court how a Rule 45 subpoena served upon a non-party, Ms. Marcus, who is in Russia, that I become personally liable on that subpoena based upon a discovery order which was written by the attorney for the foreign representative. It's very interesting to note because this court has said that Rule 45G is not — while you can have contempt sanctions there, usually there has to be a motion to compel compliance. There has to be a discovery order based upon Rule 45. This discovery order that I'm alleged to have violated was predicated upon Rule 45, the Rule 45 subpoena, that was directed to Ms. Marcus, not to me. I am personally being held in contempt on a subpoena that was issued to Ms. Marcus. But that's — Ms. Rogers, are you being held in contempt on the subpoena? Are you being held in contempt on the order that the court made that specifically directed you to take certain actions to — Well, that's very — — to move this case forward? Your Honor, first of all, there was a full response to the subpoena. There was a formal response. If you look at A118 of the record, on September 4th, I did give a full response to the subpoena. And that's a very interesting point because we have on the one hand the subpoena. And if you read the court's order, it says Mr. Worms has been held in contempt of court until he complies with the subpoena. There's constant reference to compliance with the subpoena. But the subpoena was complied with by the September 4th, 2019 response. Now, the court also raised a very interesting point with respect to the bank case. And here is the problem for the foreign representative. This court has not fully addressed, but the lower courts have, the nature of discovery in a Chapter 15 case. In a Chapter 15 case, it has been held by the lower courts that Rule 2004 is the main way in which discovery is conducted, not by Rule 45 subpoena. So had this been done the way the bank case was done, then there would have been adequate sanctioning authority under Section 105. So we have the situation where the due process issues are very much intertwined here. And the due process issues which you have raised, Your Honor, does provide for reversing and vacating this award, in addition to the fact that the inherent authority, the inherent contempt authority. Because when you refer to the notice and you refer to the distinction between what happened in the bank case and what happened here in the Marcus case, you can see that there's a clear due process violation that occurs here that is sufficient to vacate this contempt sanction. Thank you, Mr. Worms. Thank you much. Thank you both for your arguments. We'll take it under advisement. Thank you, Your Honor.